WRIGHT, J.,
delivered tbe opinion of tbe Court.
After a careful examination of this record, we think tbe decree of tbe Chancellor should be affirmed.
It is argued here for complainant, that he is entitled to relief upon tbe defendant’s warranty, whether be, at tbe time of tbe sale, knew of tbe unsoundness of tbe slave or not; that though tbe bill of sale only contained a warranty that she was sound, “so far as be knew,” yet, in bis verbal statements, during tbe contract, be represented her absolutely to be sound. If such proof as this were admissible, against the plain language of tbe bill of sale, without an allegation of fraud, or mistake in its execution; yet the argument is *541 sufficiently answered by the fact that the bill itself states that defendant represented her “as sound so far as he knew.” And if it be said that defendant is liable upon the ground of fraud, for these unqualified statements of soundness, the same answer may be given, that the bill negatives the fact of any such statements.
But aside from this, we think the proof fails to show that this slave was unsound at the time of complainant’s purchase; or that defendant perpetrated any fraud in the sale. The answer positively denies any unsoundness or fraud. And the proof is too uncertain and unsatisfactory, to base any decree in complainant’s favor upon it. The slave is proved to have been an excellent cook, wash-woman and ironer, and the reason given by defendant for selling her, was her bad and ungovernable temper. That she had this temper, is proved. She had been hired for some, weeks preceding the sale, to a witness by the name of Blount, who lived within a few yards of complainant, and who carried her to him; and during this time, she manifested no symptom of disease, to witness’ knowledge. The sale was made in July, 1856. Dr. Pride, a witness of complainant visited her about two years before, while she was owned by the defendant, and discovered no permanent disease or unsoundness. He was then of opinion, she only labored under some temporary illness; and this he communicated to defendant, evidently impressing him with the belief that she was not seriously diseased.
Soon after this, she had a healthy child, and it is proved to have been sound. And the whole body of the proof is, that prior to the sale to complainant, she had been sound, unless it be one or two fainting spells, *542 which she had while defendant owned her, and which, it appears, he communicated to complainant. Whether these attacks- were feigned or real, is left in doubt by tne proof. It appears that she had, them Yery soon after complainant purchased her, but it is more than probable, if real, they were temporary in their character, and did not cause her death, which seems to have taken place in 1858.
The disease of which she died, appears to have been dropsy. But no witness traces it satisfactorily, to a period before the sale.
Decree affirmed.